Good morning, I'll call the case of Blue Bell Creameries v. William S. Kaye. Good morning. Good morning, Your Honor. Bill Bensinger for Blue Bell Creameries. May it please the Court. The bankruptcy court below held that Blue Bell was not entitled to a new value defense to the extent the debtor had paid Blue Bell for that new value. And so holding, the bankruptcy court included a requirement in the new value defense that's not present in the statute, namely that new value must remain unpaid. Blue Bell requests that this court reverse the bankruptcy court's judgment and hold that new value does not have to remain unpaid for three reasons. First, Section 547C-4 speaks in terms of whether the new value payment is otherwise unavoidable or not. It does not require that new value must remain unpaid. Second, the statute is structured to fairly treat both creditors that provide new value and debtors' estates. And when new value has to remain unpaid, it unfairly benefits the estate and harms the creditor. And finally, there is nothing in this court's jurisprudence, specifically nothing in NRAJIP Florida systems, that requires that new value must remain unpaid. In other words, interpreting the bankruptcy code begins at the same place that any endeavor in statutory interpretation must begin, and that is with the language of the statute itself. Section 547C-4B, which the court can find on the top of page 14 in Blue Bell's brief, states that after receiving a preference payment and after providing new value, the creditor can offset that new value against the earlier preference to the extent that, quote, on account of such new value, the debtor has not made an otherwise unavoidable transfer to or for the benefit of the creditor, end quote. Now, you are, to get to, the reason you're here and you're the appellant is because the bankruptcy judge felt that she was stuck. She felt she was stuck by our particular precedent that required the result. You have argued that as dictum, is that correct? Yes, ma'am. Will you, could you elaborate for us on that argument? Yes, ma'am. In the court's decision of Jet Florida system, the issue before the court was whether the creditor had provided the debtor with new value. The issue was not whether the new value remained unpaid. In Jet Florida, the debtor leased certain warehouse space from the creditor and paid that lease payment and then filed for bankruptcy. After filing for bankruptcy, the debtor attempted to recover that lease payment as a preference and the creditor asserted a subsequent new value defense, arguing that the availability of the warehouse space, even though the debtor didn't use the warehouse space, was new value. This court did an in-depth analysis of what constitutes new value under Section 547A2, where the Bankruptcy Code defines new value. It looked at that statute and it looked at another case law where creditors had asserted a new value defense. And ultimately, this court determined that the creditor had not provided the debtor with any new value. That's as far as the facts and circumstances went in Jet Florida systems. The facts and circumstances did not extend to the issue of whether new value remained unpaid. And that's why the court's statement that new value must remain unpaid was dictum. That was not the issue before the court. Both parties conceded that the new value remained unpaid in Jet Florida. That's correct, Your Honor. On page 1083, you can see that the parties did concede that there is no new value payment, which further supports the idea that the statement that new value must remain unpaid was dictum. It's, in effect, doubly dictum. There is no new value. The court found that there is never any new value and there is no new value payment. So under those facts and circumstances, there was never any reason for the court to consider whether new value must remain unpaid. But let's assume you're correct that that's dictum and you now have an open field on which to run. Tell us why now, in this case, not bound by that case, we should not go along with the positions taken by the trustee about remains unpaid. Because, Your Honor, the remains unpaid requirement is contrary to the plain language of the statute itself. As I said, the statute allows a creditor to offset new value to the extent that the creditor did not, or I'm sorry, the creditor can offset new value to the extent that the debtor did not make an otherwise unavoidable transfer to or on account of the creditor. Nowhere in that statute does it say the words remains unpaid. Rather, the fact that the creditor did not make an otherwise unavoidable or not. If the statute or if the new value payment is not subject to any other defenses, then the creditor is entitled to the new value defense. That's what the statute says. I gather that's because the new value paid can itself be recovered as a preference. I'm sorry, Your Honor. I mean, because if the new value is not otherwise unavoidable is very arcane language of bankruptcy. But I gather that if the trustee could recover the new value paid, right, as a preference, which is why you're saying you can offset the new value against the prior payment. Correct, Your Honor. All that the statute requires is that the new value payment not be otherwise unavoidable. That is, that it not be subject to some other defense. So if it's subject to recoupment by the trustee, then that's your point. Is that right? Yes, Your Honor. If it is avoidable but for Section 547C, for defense, then the creditor is entitled to offset the new value against the earlier. And if he's not allowed to do it under this remains unpaid, is that, how is that bad for the creditor? Is it double bad? It is doubly bad, Your Honor, because what happens when new value has to remain unpaid is the creditor provides the debtor with new value, then has to return that payment for that new value that the creditor provided, and the creditor cannot use the new value as an offset. So in essence, what the creditor does is pay twice. They pay once by providing the debtor with the new value and not being able to get any benefit, any defense from it, and then has to return the payment for the new value as well. And that has the effect of discouraging creditors from doing business with troubled entities, which is antithetical to the purpose of the statute. As the Supreme Court recognized in Barnhill v. Johnson, the purpose of the new value defense as all preference defenses is to encourage creditors to do business with troubled entities in the hope that the troubled company can avoid bankruptcy altogether. Well, when new value has to remain unpaid, it actually gives creditors an incentive to stop doing business with the debtor because they're not going to get any benefit from having done business. They're not going to get an offset for providing new value, and they might have to return the new value payment as well. So that's why courts have recognized that this is a double benefit, a double bad, as Judge Gilman called it, for the creditors. There's a split of authority, though, on this among the circuits. Is that correct? There is, Your Honor. The Fifth Circuit, the Ninth Circuit, the Fourth Circuit, and the Eighth Circuit all hold that new value does not have to remain unpaid, and they do so largely on a plain language reading of the statute. The Seventh Circuit, however, does hold that new value has to remain unpaid. And it's had that holding for quite some time. Most recently, in September of last year, the one-star case that the appellee cites in their brief doubled down, if you will, on this remains unpaid rule. They cited to a 2016 case from the Seventh Circuit, Jason's Food, which again says remains unpaid. That cites to N. Ray Prescott from 1986, the Seventh Circuit, that says new value must remain unpaid, which cites to a bankruptcy court for the District of New Hampshire from 1984 that says new value must remain unpaid. But the thing about all that line of cases, Your Honor, from the bankruptcy court for the District of New Hampshire all the way to the Seventh Circuit in 2017, not one of those courts actually does an in-depth analysis of what the statute says. This rule has just kind of carried on from really the Bankruptcy Act prior to the bankruptcy. It's carried on through these opinions. And that's another important point, Your Honor. The Bankruptcy Act, Section 60C of the Bankruptcy Act, which was the predecessor to the Bankruptcy Code. Is that from 1898? Yes, Your Honor. The Bankruptcy Act, Section 60C, provided that a creditor could offset new value against an earlier preference to the extent that, such new value was remaining unpaid as of the date of adjudication in bankruptcy. So it's clear from that statute, Your Honor, that Congress knows how to include remains unpaid language and a remains unpaid requirement in a subsequent new value defense statute. They did so rather explicitly in Section 60C. But they changed that language in the Bankruptcy Code in Section 547C-4. And when they changed that language, there is a change of intent. No longer is the question centered around the issue of whether new value remains unpaid, but rather the question centers around the issue of if paid, was that new value payment otherwise unavoidable or not? If there are no other defenses applicable to the new value payment, then the creditor is subsequent new value defense. And that's what we have here. As the Court can see on page 8 in Bluebell's brief, page 9 in the Trustee's brief, or page 3 of the Bankruptcy Court's opinion, the party stipulated before trial that all 13 payments that the debtor made to Bluebell pre-petition, in the 90 days pre-petition, were preferences under Section 547B, subject only to any defenses that Bluebell proved at trial. Bluebell only proved one defense at trial, and that is the subsequent new value defense. And because there are no other applicable defenses, Bluebell is entitled to its full Section 547C-4 subsequent new value defense without any diminution because the creditor paid for that new value. Do I understand that the net effect, if we agree with you, it's going to reduce your liability from the 400,000 range to the 200,000 range? Is that basically correct? That's correct, Your Honor. There's no question, there's no dispute as far as Bluebell is aware concerning the actual facts when there was a payment, when there was a shipment of new value. It's just a question of how courts compute this new value defense in applying this statute. In the Trustee's brief, Your Honors, he has yet to show this Court how the Section 547C-4 that speaks in terms of whether a new value payment is otherwise unavoidable. The Trustee has yet in his brief to show this Court how that phrase means that new value must remain unpaid or why it requires that new value must remain unpaid. Perhaps we'll be able to do that this morning. Unless this Court has any further questions, I'll reserve my time for rebuttal. Thank you. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is John L. Rodden. I represent William Kay, who is liquidating trustee for BFW Liquidation LLC, which is formerly known as Bruno's Supermarkets LLC. The issue before the Court this morning is a narrow but important issue of and that is whether for the purposes of the new value defense contained in Section 547C-4, whether new value shall remain unpaid. There are three primary reasons why the Court should affirm the Bankruptcy Court's ruling. One is that this Court in Jett, Florida, had previously ruled that new value must remain unpaid. The second reason is that the text of the statute supports the Bankruptcy Court's ruling. And the third reason is that the policies underlying the statute support the Bankruptcy Court's ruling. But in Jett, in Florida Jett or Jett, Florida, the Court didn't have to decide that new value must remain unpaid. The parties just agreed to that. So it wasn't really litigated in that case, was it? I believe the language used in the opinion by the Court was that that requirement had concededly been satisfied. That is correct, Your Honor. However, the Eleventh Circuit laid down a standard and courts within the Circuit have nearly universally followed that standard in the 30 ensuing years. All right, but can you, do you have any convincing argument why that's not dicta, the remains unpaid condition? Well, Your Honor, the Court laid out a test, as I referenced, and the Court considered each element of the test. The first was that there were transfers that were made and there was subsequent new value that was provided. The new value was unsecured, and the third was that the new value remained unpaid. The Court, even though it was concededly satisfied and stipulated essentially by the parties, the Court did consider that. My question is what argument can you make to convince us it's not dicta in Jett, Florida? Well, Your Honor, I would say that to the extent it is dicta, the Seventh Circuit in its decisions has clearly considered the issue and has ruled that new value shall remain unpaid. There are four circuits that say no. That's correct, Your Honor. And the 11 or so courts within this Circuit have also held that new value shall remain unpaid. The bankruptcy court in the very Alabama district we're talking about said the opposite, right? There's one bankruptcy court that says it is dicta and wasn't bound by it. That's correct, Your Honor. In the HB Logistics case that was cited by the appellant in its brief, the bankruptcy court did rule that it was dicta. I mean, it sounds like your best argument there is, well, it may be dicta, but it's persuasive dicta, but it's still dicta. Well, Your Honor, to the extent it is dicta, we would obviously agree that it is persuasive dicta and also that the policies underlying the statute would support. And how do those policies support the remains unpaid? Well, Your Honor, the interesting thing that my friend did not explore in his argument or really in his brief is that the bankruptcy code doesn't look at the transferee here, Bluebell, in isolation. The bankruptcy code looks holistically at all creditors and how all creditors are treated, and that goes to the equality concept, and that's the primary concept under the bankruptcy preference statute, Section 547. But, I mean, the policy that he says is served by his position is that creditors, if they know they're going to get credit for new value advance, then they continue to do business with troubled entities, and that's a good policy, isn't it? It is, Your Honor, and that is one policy, one of two or three policies that underlie the statute, and I believe that the trustee's reading in the bankruptcy court's ruling supports that policy in that the creditor in this case is able to avail itself of the unpaid new value for its defense. But if your position holds a creditor would be foolish to every extent. First sign of trouble, they all should have bailed on Brunos. Everybody get out, and that really in the long run wouldn't help the estate because the longer, you know, that they were there to do business, arguably, the more you're going to have in the estate. Bluebell would have been smart instead of trying to work with these people and continuing to deliver their ice cream, just say goodbye to you, and because they didn't, they're out all their goods, and now the money that they were paid for the goods they've got to pay back where the other unsecured creditors, you know, they didn't extend the same sort of credit. It doesn't seem quite fair, does it? Well, what is fair, Your Honor? I disagree respectfully that that's unfair because the Bankruptcy Code contemplates that result, of course, and that's in Section 502H of the Bankruptcy Code. That section provides that if transfers are repaid to the bankruptcy estate, the money that the creditor who it's transferred from receives a claim for that amount. So that creditor is similarly situated, then, with the other creditors who got on, who were unpaid, and so the money that's recovered by the trustee is shared pro rata by all creditors, which is underlies the policy of equality and fairness that's inherent in the statute. Well, except your counsel points out it's a double whammy for the creditor, though, if they don't get offsetting credit for the new value because, first of all, they're going to have to return the money that was paid within the 90 days, and now they extend new value, and then to the extent they got payment on that, they're going to have to return that as well, and now they're only going to get 10 cents on the dollar or whatever pro rata distribution, right? Well, Your Honor, not with respect to how they're treated holistically with other creditors because all creditors may receive 10 or 20 or 30 or whatever the ultimate distribution is to general insurers. Right, but the other creditors didn't extend new value, though, whereas Bluebell did. Well, Your Honor, the other creditors extended trade credit. So let's take a simple example where you have a creditor that supplies widgets to the grocery store and doesn't receive any transfers during the 90 days, and therefore it has a claim for, say, the value of those widgets, which for this hypothetical, let's assume it's $10,000. That creditor, upon the bankruptcy filing, has a $10,000 claim against the bankruptcy estate. With Bluebell, or with a creditor similarly situated to Bluebell, when the transfer is for new value or money that was, excuse me, goods that were unpaid, but also has its claim for the transfers that were avoided. So it's similarly situated. It's an even playing field for everyone. Well, except, as Judge Carnes points out, though, wouldn't the creditor like Bluebell have been better off if, under your theory, not to have ever extended the new value? Well, Your Honor, obviously, they were paid for a good portion of that new value. I will say that, in this instance, as the bankruptcy court's opinion indicates, and the record below indicates, Bluebell wasn't exactly working well with Bruno's during this time period. In fact, Bluebell prosecuted extensively an ordinary course of business defense, and the bankruptcy court found that that ordinary course of business defense did not apply because Bluebell was exerting payment pressure. So they were trying to get themselves paid. They weren't necessarily working with creditors as if nothing was going on. They were aware that there were liquidity issues at the supermarkets. Well, sure, in the bankruptcy jungle, every man's for himself, right? I mean, that's not unusual. And that's the reason for the policy behind the statute, Your Honor, is that every man for themselves, like Bluebell, they should not be able to elevate themselves above the interests of the general unsecured body. What do you make of the point that the remains unpaid language was in the Bankruptcy Act of 1898 and was eliminated in the 1978 Bankruptcy Code? Doesn't that argue in favor of not applying this remains unpaid language now? I don't think so, Your Honor. And that's — if you look at the text of the statute that's enforced today, Section 547C4, there is a reference in the text to, of course, otherwise unavoidable transfers. The preamble paragraph of the defense provides that it's under this section. So if you put those two together, otherwise unavoidable and under this section, it refers to transfers that may have happened or transfers that may be avoidable outside of the section. There's a toolbox that a trustee is provided with on a bankruptcy filing, and that includes — that includes a preference statute, obviously, which enables payments that were received in the 90 days to be recovered, as well as fraudulent transfers, setoffs, and other types of actions. Bankruptcy lawyers refer to those as Chapter 5 causes of action. The point of those is not to punish creditors necessarily, but the point of those is to level the playing field for all creditors. And in doing that, by excluding transfers that may have been paid or new value that may have been paid during the preference period, the Congress was expressly thinking that if there was unpaid new value, it wouldn't have been subject to one of those transfers, and therefore, it would not have been otherwise unavoidable. And what is your authority, if any, for this interpretation, that it has to be outside of Section 547? Your Honor, admittedly, there is no authority for that interpretation of the statute. Bankruptcy courts and the circuit court, in this instance, early on after the — after the This is Elrod on bankruptcy at this point. Well, Your Honor, it's a reading of the statute. But no court has interpreted it the way you're arguing. No, not that I'm aware of, Your Honor. Okay. We'd be the first, huh? Well, Your Honor, I think there are several other reasons to uphold this Court's prior statement in Florida, and that goes to the policy behind it, as well as the body of law that exists in this circuit. As the Court is well aware from its first opinion in Bonner v. City of Pritchard, Starry decides this is an important issue in this circuit. And bankruptcy trustees and parties have ostensibly operated under that law for the last 30 or 40 years, depending on how you look at it. Well, not necessarily. I gathered that there was a fellow bankruptcy court or judge in the same district as this judge or somebody had deviated. But apparently, there seems to be some sense among the bankruptcy court that they may be bound by this, but they're not clear whether it was a dictum or not. So I think this is our opportunity today to clarify that. But let me ask you something else. Besides the policy considerations, if you don't accept an argument that essentially businesses will go under a lot sooner under your position because nobody's going to want to send them goods if they're not going to get paid for them, textually, I'm having trouble understanding your position as well. A trustee may not avoid a transfer to or for the benefit of a creditor to the extent that after such transfer, the creditor gave new value for the benefit of the debtor, on account of which new value the debtor did not make an otherwise unavoidable transfer. Why does that textually not support Bluebell's position here? Well, Your Honor, if you look at subsection C-4B, the otherwise, the antecedent to otherwise unavoidable refers to this section. So in other words, it excludes the defenses in this section. In other words, there was no point in even writing any of this because by writing this, you're going to get to another section that's going to negate what, to me, plain meaning of new value might be. Well, there would be no point in including the language, this section, if Bluebell's interpretation would be correct. Why wouldn't it just say the trustee may not avoid a transfer? Because it's implicit that if it's in that section, that it refers to that section. It's self-contained within the statute. So the textual approach is obviously, you know, it is an argument that no court has embraced, but the principles of stare decisis would motivate in favor of upholding the court's prior pronouncement on new value. Your Honor, Bluebell, in this case, wants its cake and it wants its ice cream and it wants to eat them, too. And here they want to receive it. Now, it gave its ice cream up. It can't eat that. Somebody else ate the ice cream, right? Well, Your Honor, we want to give them a portion of their ice cream back and the proceeds of their ice cream back. And they don't get all of that ice cream back. They get back that portion that's spread out pro rata with other creditors. They shouldn't be able to elevate their own interests above those of other creditors, especially in a case where they were taking collection action. That's — there is no doubt about that. While that's not relevant to or not directly at issue this morning, that is a fact that's underlying this case. Your Honor, Your Honors, we believe that the bankruptcy court's ruling should be affirmed based upon this court's prior pronouncement in Jett, Florida, as well as the text of the statute and the policies underlying the statute. Unless the court has any further questions, I will sit. Thank you. Thank you, Your Honors. May it please the Court. Your Honor, the trustee makes a few arguments. He says that this court laid out a test in Jett, Florida systems that new value must remain unpaid or argues stare decisis. However, this court in Watts v. Bell South said that regardless of what a court may say in an opinion, a decision cannot hold further than the facts before it. And that's what Jett — that's why Jett, Florida's statement that new value must remain unpaid is dicta. It goes beyond the facts that were before the court in that case. Judge Gilman asked about whether this was persuasive dicta. And perhaps it would be persuasive dicta if the court had gone into an analysis of Section 547c4b, had looked at what other courts had done, but it didn't. It made two statements in the entire opinion that says new value must remain unpaid. The first was in this brief recital of the elements of the defense. And the second was saying that the parties conceded that new value remains unpaid. If this court were to take a red pen and strike those two statements out of the opinion, it would not change the court's holding, its ruling, or its rationale in the least. It was dicta. The trustee also brings up — he says that prior to the petition date, Bluebell was not working well with Bruno's and was taking collection action. Your Honor, that's completely irrelevant. As this court said in the case of Isaac Lisco, coming at it from the opposite side. In Isaac Lisco, the creditor was asserting in ordinary course defense and said, well, we also provided new value. This court said, completely irrelevant. Two different statutes, two different defenses, and the elements of the two do not overlap. We think coming from it this way, the same is true. The fact that Bluebell might have or did assert some pressure to get paid is completely irrelevant to the fact of whether it is entitled to a subsequent new value defense. And finally, Your Honor, the bankruptcy, according to Elrod, as Judge Gilman put it, the trustee's argument that otherwise unavoidable means something outside of Section 547. The trustee is correct. No court has held that. However, the Bankruptcy Court for the Western District of Michigan and check reporting systems held that that position would ultimately lead to nonsensical results. So it's not that courts have not adopted that position. It's that courts have almost unanimously, as far as I'm aware of, rejected that position. Unless the court has any further questions. No, thank you. We appreciate the presentation. Thank you, Your Honor. That concludes our court work for the morning, and the court is in recess until tomorrow morning at 9 o'clock. All rise.